UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

STEVEN JAMES,                              )
                                           )
      Petitioner,                          )
                                           )
    vs.                                    )          Case No. 4:10CV1791 JCH
                                           )
UNITED STATES OF AMERICA,                  )
                                           )
      Respondent.                          )

## MEMORANDUM AND ORDER

This matter is before the Court on Petitioner Steven James's Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. §2255 ("Motion"), filed September 23, 2010.  (ECF No. 1). This Court considers James's claims in light of his §2255 Motion and the evidentiary hearing before this Court.

## BACKGROUND

On March 13, 2006, law enforcement officers with the St. Louis County Police Department, Bureau of Drug Enforcement, Street Enforcement Team conducted an investigation into drug sales near Page and Pennsylvania Avenues in Wellston, Missouri.  (Opposition to Steven James's Motion to Vacate, Set Aside or Correct Sentence Pursuant to Title 28, United States Code, Section 2255 ("Response"), ECF No. 17, p. 2).  Detective Brian Flanagan, operating undercover in an unmarked vehicle, turned into the parking lot of PX Liquor on Page Avenue.  (Id.).  Detective Flanagan told James that he was looking for a "fifty," *i.e.*, $50 worth of crack.  (Id., p. 3).  James told him that he could obtain the crack from his associate Marcell Hogans.  (Id.).  Flanagan drove James to a residence at 1206 Robert Powell in St. Louis County, Missouri.  (Id.).  James took Flanagan's $50

in "buy money" and made a hand-to-hand narcotics transaction with Hogans at the door of the residence.  (Id.).

James returned to Flanagan's vehicle and gave him two pieces of crack.  An arrest team apprehended James a short distance from 1206 Robert Powell.  (Id.).  Hogans also was arrested and the $50 in "buy money" was found in his possession.  (Id.).

On November 1, 2007, a federal grand jury indicted James and Hogans in an indictment that charged James with (1) distribution of cocaine base (crack) and (2) conspiracy to distribute cocaine base.  (Id., p. 4).   On January 23, 2008, a jury convicted James on both counts.  (Id.).

After trial, but before James was sentenced, Steve Stenger replaced James's appointed counsel, Lucy Liggett, for purposes of his sentencing and post-conviction direct appeal.  (Id.).  James claimed that he had an intimate relationship with Liggett and requested she be removed from his case.  (Id.).  At sentencing, the Court adopted the findings of the Presentence Investigation Report.  (Id.). The applicable advisory guideline range was 262 to 327 months.  (Id.).  This Court sentenced James to 262 months in prison and six years of supervised release.  (Id.).

On June 7, 2008, James's counsel, Steve Stenger, filed a notice of appeal.  (Id., p. 5).  In addition to the briefs filed by Mr. Stenger, the Eighth Circuit also permitted James to file a *pro se* supplemental brief in support of his appeal and a *pro se* supplemental reply brief.  (Id.).  On May 11, 2009, the Eighth Circuit affirmed this Court's judgement and held as follows:

1.      This Court did not abuse its discretion in admitting James's prior conviction;

2.      Hogan's statement regarding his intention to use the firearm he brandished, as well as his conduct in fleeing the house, properly was admitted "to explain to the jury the events that gave rise to the drug transaction and James's arrest";

3.      This Court's determination that James committed perjury, and application of the

two-level obstruction of justice enhancement, was not clearly erroneous;

4.       This Court did not abuse its discretion and did not violate the Eighth Amendment

in sentencing James because the severity of the sentence was "largely the result of James's

extensive criminal history" and James committed the instant offenses while on parole; and

5.       James's additional arguments in his *pro se* Supplemental Brief and were all without

merit.

See United States v. Steven James, 564 F.3d 960 (8th Cir. 2009), *cert. denied* 130 S.Ct. 433

(Oct. 13, 2009).

On September 23, 2010, James filed his instant §2255 Motion.  James's §2255 Motion

asserts six claims for relief that he previously raised in his direct appeal before the Eighth Circuit:

(1)       There was a lack of voice recordings of the narcotics transaction, which

constituted prosecutorial misconduct;

(2)       Evidence of the firearm his co-conspirator brandished should have been excluded;

(3)       He should have been sentenced to a lesser included offense reflecting "buying and

selling" (of drugs) and "simple possession" of narcotics;

(4)       The sentence is unreasonable considering the amount of narcotics involved;

(5)       The two-point enhancement for obstruction of justice is unwarranted; and

(6)       Prosecutorial misconduct related to whether the "buy money" is what it purports

to be.

The Eighth Circuit previously held on direct appeal that these claims were without merit.

United States v. Steven James, 564 F.3d 960 (8th Cir. 2009).  Because James has not argued any

change of law since the Eighth Circuit decision, this Court will not address these points here because

they cannot support James's §2255 Motion.  See English v. United States, 998 F.2d 609, 613 (8th Cir.

1993) ("In the absence of an intervening change in the law, or newly discovered evidence, we will not reconsider any claim that was resolved on direct appeal in a section 2255 habeas proceeding."); United States v. Sanders, 723 F.2d 34, 36 (8th Cir. 1983) ("Absent an intervening change in the applicable law, issues that have been raised and decided on a motion for a new trial cannot be reconsidered in a subsequent collateral attack."); Davis v. United States, 417 U.S. 333, 342 (1974)(same).

In his §2255 Motion, James also raised the following claims that were not raised before the Eighth Circuit:

1.      James argues that the Court improperly ordered him to pay two $100 special assessments for his two convictions.

2.      James argues that the drug quantity and his prior criminal offenses were not properly alleged.

3.      James argues that he was provided ineffective assistance of counsel based on the following:

a.      James claims he had an intimate relationship with his trial counsel, Ms. Liggett, that required replacement of that attorney;

b.      His appellate counsel failed to provide him with transcripts of the underlying proceedings;

c.      His counsel failed to object to the admission of the "buy money";

d.      His counsel failed to object to the assessment of the two special assessments totaling $200; and

e.      His counsel failed to object that the indictment did not allege the requisite elements of the offense.

On March 10, 2011, this Court appointed Paul D'Agrosa as stand-by counsel for James after James indicated that he wanted to appear pro se.[1]  (ECF No. 26).

On March 16, 2011, James filed his "Out of Time Reply Motion '2255'" (ECF No. 109).[2] James asserted the following claims: (1) prosecutorial misconduct by hiding co-defendant Hogans, who allegedly would have exonerated James (new claim); (2) prosecutorial misconduct for producing a copy of the buy money, not the actual money (new claim); (3) a personal relationship with trial counsel, Ms. Liggett; and (4) ineffective assistance of counsel for failure to investigate a prior burglary, which was a predicate offense for his career offender status (new claim).

This Court conducted evidentiary hearings on May 20, June 1, and June 20, 2011.  On July 5, 2011, James filed his Memorandum in Support of Motion to Vacate.  (ECF No. 48).  On July 21, 2011, the Government filed its Post Hearings Brief (ECF No. 54).  On August 2, 2011, James filed his Post Hearings Reply Brief to the Government's Opposition to Vacate U.S.C. "2255" (ECF No. 58). The Court reviews James's Motion based upon the briefs filed with this Court and the testimony from the evidentiary hearing.

### STANDARD OF REVIEW

"Pursuant to 28 U.S.C. § 2255, a defendant may seek relief on grounds that the sentence was imposed in violation of the Constitution or law of the United States, that the court lacked jurisdiction to impose such a sentence, that the sentence exceeded the maximum authorized by law, or that the sentence is otherwise subject to collateral attack." Equere v. United States, No. 4:07-CV-1571, 2008 U.S. Dist. LEXIS 91052, at *6 (E.D. Mo. Nov. 10, 2008) (citing 28 U.S.C. § 2255).  To warrant relief under § 2255, the errors of which the movant complains must amount to a fundamental

---

[1]This Court originally appointed Mr. D'Agrosa on December 9, 2010. (ECF No. 9).

[2]Although James's "out of time reply" was untimely, this Court will consider those claims. Nevertheless, those claims fail because they are procedurally barred or are meritless.

miscarriage of justice. <u>Davis v. United States</u>, 417 U.S. 333, 346, 94 S. Ct. 2298, 2305, 41 L. Ed.

2d 109, 119 (1974); <u>Hill v. United States</u>, 368 U.S. 424, 428-29, 82 S. Ct. 468, 471, 7 L. Ed. 2d 417,

422 (1962).

## DISCUSSION

### I.      Defective Indictment

James claims that his indictment was defective because it did not include the drug quantity or

his previous conviction.  (ECF No. 1-1, p. 5).  James contends that he should only have been

sentenced for simple drug possession because of the defective indictment.  (<u>Id.</u>).

James's argument is in error because the Government was not required to include the drug

quantity or his previous conviction as part of the indictment.  The indictment (and the jury

instructions) clearly state that James attempted to distribute a "detectable"amount of cocaine, which

is all that was required.  The quantity of the illegal drugs involved here was a factor for the Court to

review to determine the applicable mandatory minimum sentence.  <u>See United States v.</u>

<u>Aguayo-Delgado</u>, 220 F.3d 926, 934 (8th Cir. 2000)(affirming the sentence "even where the drug

quantity was not charged in the indictment or found by the jury to have been beyond a reasonable

doubt").

In addition, James stipulated to his prior conviction at trial.  The jury heard that James had

been convicted of delivery of a controlled substance in the Circuit Court of St. Louis County, Cause

No. 91CR1586B.  (ECF No. 17-6).  James cannot contend that the indictment was insufficient for

failing to allege his prior conviction when he stipulated to the conviction at trial. James's claim is

denied.

**II.      Consecutive Special Assessments**

James argues that he was unlawfully subjected to consecutive special assessments pursuant to 18 U.S.C. §3013 for a total of $200.  (ECF No. 1-1, p. 4).  James claims that these assessments are prohibited because they constitute "cumulative punishment" and that the trial court was vindictive in ordering the assessments.  (Id.).

The Court correctly applied the law when it assessed two assessments in the amount of $100. 18 U.S.C. § 3013(a)(2) provides that "the court shall assess on any person convicted of an offense against the United States . . . in the case of a felony . . . the amount of $100 if the defendant is an individual." That is, 18 U.S.C. § 3013(a)(2) mandates that the Court assess a $100 special assessment when an individual is convicted of a felony. James was convicted of two separate felonies, distribution of crack cocaine and conspiracy to distribute crack cocaine.  The Court properly imposed two special assessments based upon James's two felony convictions.  James's claim fails on this basis.

**III.     INEFFECTIVE ASSISTANCE OF COUNSEL**

**A.      Legal Standard**

For an ineffective assistance of counsel under § 2255, "'a movant faces a heavy burden.'" Equere, 2008 U.S. Dist. LEXIS 91052, at *7 (quoting United States v. Apfel, 97 F.3d 1074, 1076 (8th Cir. 1996)).  To prevail on an ineffective assistance of counsel claim, a convicted movant must first show "that his counsel's performance was deficient, and that he suffered prejudice as a result." Paul v. United States, 534 F.3d 832, 836 (8th Cir. 2008) (citing Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). The movant must also establish prejudice by showing "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694; Malcom v. Houston, 518 F.3d 624, 626 (8th Cir. 2008).  A reasonable probability is less than "more likely than not," Kyles

v. Whitley, 514 U.S. 419, 434 (1995), but more than a possibility. White v. Roper, 416 F.3d 728, 732

(8th Cir. 2005).  A reasonable probability "is a probability sufficient to undermine confidence in the

outcome." Strickland, 466 U.S. at 694. "[B]oth the performance and prejudice components of the

ineffectiveness inquiry are mixed questions of law and fact." Id. at 698.

>  1.  Failure to Object to the Two Special Assessments, Charges in the
>  Indictment or Admission of the "Buy Money"

James argues that his counsel was ineffective for failing to object to (1) the two special

assessments of $100 imposed on James, (2) the failure of the Government to properly charge the drug

quantity involved and James's prior offender status, or (3) the admission of the "buy money" at trial.

(ECF No. 1-1, pp. 8-9). As discussed herein, all of these claims fail on the merits and, therefore, it

would have been fruitless for Ms. Liggett to have argued these claims at trial.  That is, the Court

lawfully imposed two special assessments.  The quantity of drugs did not need to be included in the

indictment, and James stipulated to his prior offender status.  And, the Court properly admitted the

"buy money" after the Government laid the proper foundation for admission of the evidence.  Counsel

is not required to make meritless arguments in order to avoid an effective assistance of counsel claim.

New v. United States, No. 10-2308, 2011 U.S. App. LEXIS 18157, at *9 (8th Cir. Aug. 31,

2011)(movant cannot be prejudiced by his attorney's failure to make a meritless argument); Thai v.

Mapes, 412 F.3d 970, 978 (8th Cir. 2005) (movant cannot show that his counsel performed

deficiently by failing to raise a meritless argument).  James has not shown that his counsel was

ineffective or that he was prejudiced by her representation.  James's claim of ineffective assistance

of counsel is denied.

>  2.  Introduction of Medical Evidence

James claims that his counsel was ineffective for not introducing medical evidence of his disability at trial.  At the evidentiary hearing on James's Motion, he claimed that the evidence he had provided Ms. Liggett would have exonerated him because it would have established he was disabled at the time of the incident.  James asserts that he suffered a stroke a few years prior to his arrest and, consequently, would not have been able to perform the crime alleged.  The trial court refused to allow James to testify along these lines related to his alleged medical condition.

First, James did not raise this issue in his pre-hearing briefs.  See ECF No. 1, 27.  As a result, James's claims are barred on that basis. See Wiener v. Eastern Arkansas Planting Co., 975 F.2d 1350, 1357 (8th Cir. 1992)(court declines to consider issues raised for the first time in reply briefs).

Moreover, James's claim that Ms. Liggett was ineffective fails on the merits.  Ms. Liggett testified that she investigated James's claims but could not substantiate his alleged disability.  Rather, witnesses from the Department of Corrections testified that they saw James walking without a cane and performing other acts inconsistent with having a disability.  Accordingly, the Court finds that counsel was not ineffective because she investigated James's claim, but could not find any evidence to support his assertions of disability.  James cannot demonstrate that Ms. Liggett was ineffective or that he was prejudiced.  Accordingly, the Court will deny James's claim on this basis.

3.       No Conflict With Trial Counsel

In his Memorandum, James claims that he had a personal relationship with Ms. Liggett that caused a conflict in her representation.  (ECF No. 1-1, pp. 6-8; ECF No. 48, p. 11).  In support of this claim, James notes that Ms. Liggett admitted to receiving personal items from James and having personal conversations about Ms. Liggett financially supporting her sister's children's little league team.  (Id.).  James also asserts, but Ms. Liggett denied, that Ms. Liggett agreed to support James's son.  (Id.).

The Court finds that James's claims of a conflict of interest on behalf of Ms. Liggett are unfounded.  The Court notes that Ms. Liggett has practiced criminal defense for approximately 22 years, with more than 13 years as a state public defender and 9 years as an Assistant Federal Public Defender.  (ECF No. 54, p. 3, n. 2). Ms. Liggett testified that she treated James fairly, as she would treat any other client.  She denied any allegations of an inappropriate relationship with James.  She testified that she utilized an investigator, kept James apprised of the investigation, discussed the case in depth with James, filed motions and represented James zealously at trial.

Based upon this Court's observation of Ms. Liggett and James, the Court finds Ms. Liggett's testimony to be credible. Nothing in the record or based upon this Court's observation of Ms. Liggett's representation at trial demonstrates a conflict of interest involving Ms. Liggett.  She acted in a completely professional manner.  James, however, presented contradictory evidence.  He testified that he was "too in love" with Ms. Liggett to got to trial with her, yet he turned down the plea deal and proceeded to trial.  In fact, James agreed that Ms. Liggett was a "great" and "diligent" attorney, and that they had a good attorney- client relationship.  (ECF No. 54, p. 4).

Based upon the totality of the record, this Court's experience with Ms. Liggett, and this Court's observation of Ms. Liggett during her representation of James, the Court finds that Ms. Liggett did not have a conflict of interest with James.  Moreover, the Court finds that Ms. Liggett represented James in a zealous and effective manner at all times.

4.    Failure to Investigate James's Conviction for Burglary

James also asserts in his out of time reply that Ms. Liggett was ineffective for failing to investigate his conviction for burglary of a commercial building and that this conviction should not have been utilized to establish his career offender status.  (ECF No. 27, p. 9).

First, this claim is procedurally barred because James did not raise this claim in his opening §2255 brief. See Wiener, 975 F.2d at 1357. This claim is denied on this basis.

Moreover, James's claim is without merit.  Ms. Liggett raised this issue during James's sentencing, but it was rejected by the Court.  Accordingly, the Court does not find Ms. Liggett's representation of James to be ineffective.

> 5.     Transcripts

James claims that his appellate counsel, Steve Stenger, was ineffective because he failed to provide him with trial transcripts to help prepare the appellate brief.  Mr. Stenger, however, testified that he provided copies of the trial transcripts to James and provided a copy of his June 19, 2008 transmittal letter.  (ECF No. 17-8).  The Court finds that Mr. Stenger provided James with a copy of the transcript and that his representation during the appeal was effective.

James also claims that Mr. Stenger was ineffective because he did not obtain copies of the transcript of Hogans's "sentencing" hearing[3].  James believes that Hogans admitted facts that contradicted James's testimony.  James thought this testimony would support his theory that he obtained the "buy money" from Detective Flanagan while panhandling.

James's claim for ineffective assistance of counsel based upon Mr. Stenger's failure to obtain Hogans's change of plea hearing transcript is unfounded.  Hogans pled guilty; therefore, Hogans's guilty plea transcript could not have provided any support for James's version of the events.  See

---

[3]Although he states that he needed the sentencing transcript, James refers to the change of plea hearing.

4:07cr650, ECF No. 126.  Mr. Stenger was not ineffective for failing to pursue a meritless argument.

See New, 2011 U.S. App. LEXIS 18157, at *9; Thai, 412 F.3d at 978.

IV.     **Prosecutorial Misconduct**

  A.      No Prosecutorial Misconduct with Respect to Hogans

    1.      Procedurally Barred

In his Out of Time Reply, James asserts that the Government intentionally concealed Hogans

so he would not be able to testify at James's trial and exonerate him.  (ECF No. 27, p. 2).  This claim

is procedurally barred because it was first raised in James's reply in support of his §2255 motion.

Wiener, 975 F.2d at 1357.

    2.      Government Sought Hogans

Even if James's claim were not procedurally barred, this claim fails lacks merit.  The evidence

before the Court is that the Government sought Hogans's arrest since he was indicted in November

2007 but that he had avoided police.  (ECF No. 54, pp. 5-6).  Hogans finally was arrested on January

22, 2008, miles away from his former neighborhood of Wellston.  (Id., pp. 6-7).

Hogans's initial appearance before Judge Noce occurred on January 22, 2008 at 3:29 P.M.,

the same day as James's trial began.  (Id., p. 7; see also 4:07cr650).  No assistant United States

attorneys were present for the initial appearance.  Thus, the Court finds no evidence that the

Government was aware that Hogans's was apprehended during James's trial.

    3.      Hogans's Testimony Would Not Have Assisted James

Although Ms. Liggett utilized an investigator to try to locate Hogans, the Court finds that

even if Hogans had been located timely his testimony would not have assisted James because the

evidence indicated that Hogans was also guilty of the crime.  When the Government proved its case

against James, it also provided evidence that demonstrated Hogans's guilt.  See ECF No. 17, pp. 2-3.

Thus, the jury likely would not have believed Hogans's testimony, given that the jury believed the Government's case when it convicted James.

In addition, Hogans had severe credibility issues.  First, Hogans had been convicted three times of drug sales and distribution.  In addition, Hogans provided inconsistent testimony.  Hogans first stated that he was not a drug dealer, he did not know James, and James had never been to Hogans's house at 2706 Robert Powell.  On cross-examination, Hogans again denied selling drugs or possessing a firearm.  Hogans's testimony was not credible because he pled guilty to selling drugs and admitted possession of a firearm in this case, and Hogans and was convicted twice previously of the illegal sale of a controlled substance.  See 4:07cr650, ECF Nos. 126; 162.

Hogans's statements are also not credible because they are inconsistent with other statements he has made and the testimony of James.  Hogans admitted that he was an addict who used drugs every day, but denied using drugs on the date of the offense.  Similarly, although Hogans claimed that he did not know James, James stated on direct examination at his trial that he lived at 1206 Robert Powell and that he knew Hogans.  These inconsistent statements further discredit Hogans's testimony.

Based upon the foregoing, the Court finds Hogans's testimony to be lacking credibility.  As stated, Hogans was a convicted felon and admitted drug addict.  His testimony at the hearing before the Court was full of inconsistencies with his sworn plea agreement and with prior statements made by James.  Accordingly, the Court does not believe that Hogans's testimony would have assisted James and finds no basis for granting James's §2255.

B.      Prosecutorial Misconduct with Respect to the Buy Money

James contends that the prosecutor's failure to produce the "missing" currency and instead provide photocopies of the buy money constitutes a violation under Brady v. Maryland, 373 U.S. 83 (1963).[4]  (ECF No. 27, p. 3).  James raised this issue before the Eighth Circuit.  The Eighth Circuit found this claim to be meritless.  United States v. James, 564 F.3d 960, 964, n. 2 (8th Cir. 2009). Accordingly, this claim is waived.

In addition, James has provided no evidence that the use of buy money constitutes prosecutorial misconduct.  Rather, the evidence before the Court is that it is standard practice for the police to photocopy buy money, use the photocopy during trial, and reuse the money. James has provided no evidence to indicate that the prosecutor's use of a photocopy of the buy money at trial was improper or contrary to normal practice.  This claim is denied.

Accordingly,

**IT IS HEREBY ORDERED** that petitioner Steven James's Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255 (Doc. No. 1) is **DENIED**.

**IT IS FURTHER ORDERED** that because Movant cannot make a substantial showing of the  denial of a constitutional right, the Court will not issue a certificate of appealability. See Cox v. Norris, 133 F.3d 565, 569 (8th Cir. 1997), cert. denied, 525 U.S. 834, 119 S. Ct. 89, 142 L. Ed. 2d 70 (1998).

Dated this   17th   day of October, 2011.


/s/Jean C. Hamilton
UNITED STATES DISTRICT JUDGE

---

[4]James erroneously refers to this case as United States v. Brady.  (ECF No. 27, p. 3).